IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STELLA PATERAKOS, M.D., ) | |
| ) | Case No. 21 cv 0052 |
| Plaintiff, ) | |
| v. ) | Hon. Sarah L. Ellis |
| ) | |
| CITY OF CHICAGO *et al.*, ) | Magistrate Judge Gabriel A. Fuentes |
| ) | |
| Defendants. ) | |

**DEFENDANT CITY OF CHICAGO'S MOTION TO DISMISS
COUNTS III, IV AND V OF PLAINTIFF'S COMPLAINT**

Defendant City of Chicago ("the City"), through its attorney, Celia Meza, Acting Corporation Counsel of the City of Chicago, moves to dismiss Counts III, IV and V of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In support of this motion, the City submits the following.

**I.      Introduction**

Plaintiff Stella Paterakos, M.D. ("Paterakos"), an Assistant Community Living Specialist with the City's Department of Family and Support Services, claims the City suspended her because of her race (Caucasian) and/or age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("the ADEA")[1] and the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"). Paterakos also claims the City interfered with and/or retaliated against her for taking intermittent leave under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("the FMLA"). The Section 1983 claim in Count III should be dismissed because Paterakos fails to factually support the element of discriminatory intent and fails to state a basis for municipal liability under *Monell v. Department of Social Services of the City of*

---

[1] Paterakos asserts her age discrimination claim under Title VII (Complaint at ¶ 85) but the City addresses Count II as if it had been brought under the ADEA.

*New York*, 436 U.S. 658 (1978). The FMLA claims in Count IV and V should be dismissed because Paterakos admits she was never denied FMLA leave and that Defendants disciplined her because they believed she misused FMLA leave. Further, Paterakos fails to state a claim for punitive damages in any of the Counts asserted against the City.

## II.  Allegations of the Complaint

Paterakos has been employed as an Assistant Community Living Specialist with the City's Department of Family and Support Services since July 2012. Complaint, CM/ECF # 1 ("Complaint") at ¶¶ 5, 16. Commencing on March 20, 2020, Defendant and former Regional Director Crystal Warren ("Warren") began to manage a call center in City Hall where Paterakos worked. *Id.* at ¶¶ 21, 30. On her first day, Warren allegedly "harassed" Paterakos for working at a desk other than her own and for taking a lunch break later than scheduled. *Id.* at ¶¶ 21-22. In the following days, Warren allegedly followed Paterakos to the bathroom and questioned whether Paterakos had requested permission to go on break. *Id.* at ¶¶ 24, 27, 32. Paterakos alleges her African American co-workers were not required to request permission to go on break and were allowed to use a bathroom in the basement of City Hall. *Id.* at ¶¶ 26, 29, 34. On May 12, 2020, Paterakos received a one-day suspension for allegedly leaving her desk without authorization, not setting her phone to "not ready" when she left her desk, failing to return on time from breaks, rest periods and lunches, and using the City's facilities and work time to conduct non-City business. *Id.* at ¶¶ 36, 42.[2]

On about April 2, 2020, Deputy Commissioner Yolanda Curry detailed Paterakos to a second call center during a meeting at which Warren was present. Complaint at ¶ 30. Paterakos

---

[2] The Notice of Progressive Discipline for Paterakos' one-day suspension is attached to this motion as Exhibit 1. The Court may consider the notice without converting this motion into one for summary judgment as the suspension is expressly referenced in the Complaint and serves as the basis of Plaintiff's claims. *Fryman v. Atlas Financial Holdings, Inc.*, 462 F. Supp. 3d 888, 894 (N.D. Ill. 2020).

claims her African American co-workers were not assigned to the second call center. *Id.* at ¶ 31. After Paterakos contacted her union, she was re-assigned back to City Hall a week later. *Id.*

On May 19, 2020, Warren questioned Paterakos about talking on her personal cell phone while at her desk. Complaint at ¶ 43. Paterakos stated she needed to "use her FMLA time" to make and receive calls at her desk because her father was critically ill with Covid 19. *Id.* Warren allegedly told Paterakos that she should make personal calls during her lunch periods and breaks, away from her desk, or to schedule FMLA time in advance if needed. *Id.* Paterakos agreed to do so. *Id.*

On June 26, 2020, Paterakos was suspended for three days for allegedly failing to complete an assignment while working remotely from home, despite multiple calls, voice mails and emails.[3] Complaint at ¶ 46-47. Paterakos claimed she watched a webinar the week before, and that she ultimately complied with Warren's order and watched a portion of the webinar while working remotely on June 3, 2020. *Id.*

On July 10, 2020, Warren allegedly watched Paterakos exit a bathroom and print a document before Paterakos returned to her desk. Complaint at ¶ 50. On July 16, 2020, Warren questioned why Paterakos was in the office late, despite a prior email instructing employees to leave no later than 4:45 p.m. *Id.* at ¶ 51. Paterakos explained she was "finishing up some work." *Id.* Warren followed and watched Paterakos leave the office but did not question another African American co-worker who left at the same time. *Id.* Warren again watched Paterakos leave the office on July 17, 2020. *Id.* at ¶ 52. Paterakos does not allege any adverse consequences as a result of these incidents.

Paterakos was approved to take intermittent FMLA leave on several dates in July 2020. Complaint at ¶ 55. On August 17, 2020, Paterakos was served with notice of a pre-disciplinary

---

[3] The Notice of Progressive Discipline for Paterakos' three-day suspension is attached to this motion as Exhibit 2. The Court may consider the notice without converting this motion into one for summary judgment as the suspension is expressly referenced in the Complaint and serves as the basis of Plaintiff's claims. *Fryman*, 462 F. Supp. 3d at 894.

hearing for allegedly abusing FMLA leave after she was seen socializing around City Hall. *Id.* at ¶¶ 53, 55. Paterakos claims she was not given an opportunity at the pre-disciplinary hearing to explain that she conversed with others while waiting to make or receive telephone calls relating to her father's care. *Id.* at ¶¶ 55, 56. On September 9, 2020, Paterakos was suspended for five days for abusing FMLA leave and returning late from approved leave.[4] *Id.* at ¶¶ 60-61.

On August 28, 2020, Warren sent a report of the number of calls employees answered between August 24 and August 27, 2020. Complaint at ¶ 57. Paterakos alleges that she answered a comparable number of calls as her African American co-workers who received good reviews - after accounting for the number of hours she "was available . . . to answer phones." *Id.* Warren noted Paterakos' performance and production were "very low" and "needed improvement." *Id.* Paterakos claims Warren deliberately falsified the number of hours Paterakos "was available" to answer calls in an attempt to humiliate and discredit her. *Id.* at ¶¶ 57, 59.

On September 23, 2020, Warren allegedly told Paterakos that she needed to ask her for permission to go on break given the absence of Paterakos' direct supervisor. Complaint at ¶ 62. African American employees allegedly did not have to notify a supervisor when taking a break. *Id.* at ¶ 63. On September 25, 2020, Paterakos took a break without permission as no supervisor was present. *Id.* at ¶ 64. Warren arrived two minutes later and allegedly ordered Paterakos back into the building. *Id.* Paterakos claims she was humiliated and embarrassed. *Id.*

On October 2, 2020, Warren allegedly told police officers stationed at City Hall that Paterakos abused FMLA leave, had been suspended and "would be fired soon." Complaint at ¶ 67. Warren allegedly told the officers that if they continued to socialize with Paterakos during work

---

[4] The Notice of Progressive Discipline for Paterakos' five-day suspension is attached to this motion as Exhibit 3. The Court may consider the notice without converting this motion into one for summary judgment as the suspension is expressly referenced in the Complaint and serves as the basis of Plaintiff's claims. *Fryman*, 462 F. Supp. 3d at 894.

4

hours, Warren's department would raise the matter with police management. *Id.* The same day, Paterakos filed a charge with the Equal Employment Opportunity Commission ("the EEOC"). *Id.* at ¶¶ 13, 68. Paterakos also complained to Warren's superiors that Warren violated discrimination laws and the FMLA by harassing her and making false accusations against her. *Id.* at ¶ 69.

On December 11, 2020, Warren allegedly sent an email accusing Paterakos of abusing FMLA leave by socializing in City Hall. Complaint at ¶ 72. Paterakos responded that she properly used FMLA leave to converse with other City employees between telephone calls or while waiting for transportation. *Id.*

On January 5, 2021, Paterakos filed a five-count Complaint against the City and Warren. In Count I, Paterakos alleges the City subjected her to "unwarranted" scrutiny and discipline because she is Caucasian in violation of Title VII. Complaint at ¶ 81. In Count II, Paterakos claims the City discriminated against her because of her age in violation of the ADEA. *Id.* at ¶ 86. In Count III, Paterakos asserts the City and Warren subjected her to unequal treatment in violation of the Fourteenth Amendment pursuant to Section 1983. In Counts IV and V, Paterakos asserts FMLA interference and retaliation claims, respectively, against the City and Warren. *Id.* at ¶¶ 101, 110. For the reasons set forth below, Counts III, IV and V should be dismissed for failure to state a claim.

### III. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 556.

The plausibility standard must be met with more than mere conclusory allegations. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of

action will not do." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to the presumption of truth and can be disregarded when evaluating whether the complaint pleads a claim. *Id.* at 678-79.

IV. **Argument**

    a. **Paterakos fails to state a claim pursuant to Section 1983 in Count III.**

        1. **Failure to factually allege discriminatory intent under Section 1983**

To state a claim under Section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *L.P. v. Marian Catholic High School*, 852 F.3d 690, 696 (7th Cir. 2017); *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1035 (N.D. Ill. 2018). To plead a claim under the Equal Protection Clause, Paterakos must also allege facts, not conclusions, demonstrating an invidious intent to discriminate on the basis of race or age. *Comcast Corp. v. National Association of African American-Owned Media*, -- U.S. -- , 140 S. Ct. 1009, 1019 (2020) ("a [Section 1981] plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right"); *Sung Park v. Indiana University School of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) (affirming dismissal of Section 1983 equal protection claim based on conclusory assertion of discriminatory intent); *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982) ("[t]o sufficiently state a [Section 1981] cause of action the plaintiff must allege some facts that demonstrate that his race was the reason for the defendant's inaction"); *Linda Construction, Inc. v. Allied Waste Industries*, 2017 WL 1196889 at *6 (N.D. Ill. March 31, 2017) (dismissing Section 1981 and 1983 claims premised on "bald and hackneyed assertion" that defendants treated plaintiff differently than White-owned businesses).

Here, Paterakos alleges only conclusions of an intent to discriminate. *See* Complaint at ¶¶ 90, 92. In paragraph 90, for example, Paterakos baldly alleges "Defendants intentionally subjected

6

Plaintiff to unequal and discriminatory treatment . . . ." *Id.* at ¶ 90. Likewise in paragraph 92, Paterakos claims "The actions of Defendants were intentional, willful, and malicious and/or in deliberate indifference for Plaintiff's rights . . . ." *Id.* at ¶ 92. These conclusions are "precisely the type of allegation that was rejected in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 . . . (2009)." *Sung Park v. Indiana University School of Dentistry*, *supra*, 692 F.3d at 832. *See also Linda Construction, Inc. v. Allied Waste Industries*, *supra*, 2017 WL 1196889 at *6; *Stone v. Board of Trustees of Northern Illinois University,* 38 F. Supp. 3d 935, 948 (N.D. Ill. 2014) (noting differences in pleading discriminatory intent under Section 1983 and Title VII).

Paterakos notes a single incident in which Warren stated that Paterakos was "too privileged" for Warren to speak to her. Complaint at ¶ 38. Paterakos alleges she subjectively interpreted this comment to refer to "white privilege." *Id.* Given Paterakos' admission that *she previously refused to speak to Warren* without a union representative present (*id.* at ¶ 32), Warren's alleged remark fails to plausibly demonstrate hostility towards Caucasians as a group. *Compare, Simpson v. Beaver Dam Community Hospitals, Inc.*, 780 F.3d 784, 791 (7th Cir. 2015) (references to plaintiff as a "bad actor," that he was not on his "best behavior" and would be a "better fit" elsewhere did not reflect illegal motivation); *Hanners v. Trent*, 674 F.3d 683, 694 (7th Cir. 2012) (plaintiff's subjective belief of racial animus insufficient to create genuine issue); *Clay v. Interstate National Corp.*, 900 F. Supp. 981, 990-91 (N.D. Ill. 1995) (term "you people" hopelessly ambiguous and insufficient to raise a genuine issue on summary judgment).

Paterakos also notes that her African American co-workers were not required to obtain permission to go on break and could use a bathroom in the basement of City Hall. Complaint at ¶¶ 26, 29, 34. But that is where the comparison ends, because nowhere does Paterakos allege any co-worker was allowed to engage in the *same misconduct for which Paterakos was disciplined. See id.* at ¶ 42 and attached Exhibit 1 (failing to notify of absences or to set phone to "not ready" when absent from

7

desk, returning late from breaks, use of City facilities for personal purposes), ¶ 48 and attached Exhibit 2 (failing to complete telework assignment), ¶ 61 and attached Exhibit 3 (socializing during FMLA leave and failing to return on time from leave). Accordingly, Paternakos' Section 1983 claim in Count III should be dismissed for failure to factually support the element of discriminatory intent.

### 2. Failure to allege a basis for municipal liability under Section 1983

The claim against the City in Count III must also be dismissed for failure to state a basis for municipal liability. A Section 1983 claim against a municipality requires factual allegations establishing (a) an express policy that, when enforced, causes a constitutional deprivation, (b) a widespread custom or practice that is so permanent and settled as to constitute a custom or usage with the force of law, or (c) the act of a person with final policymaking authority. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978); *Palka v. City of Chicago*, 662 F.3d 428, 434 (7th Cir. 2011).

Here, the City's express policies prohibit discrimination based on race or age, so Paternakos cannot rely on an express policy to support her *Monell* claim in Count III. *See* Municipal Code of Chicago ("MCC") § 2-74-080 (prohibiting discrimination based on race and age); City of Chicago Personnel Rule V §§ 1-5 (prohibiting discrimination, harassment or retaliation based on race or age).[5]

Paternakos also fails to allege any facts suggesting City policymakers tacitly authorized a widespread, known practice of discrimination in direct contravention to the City's express policies.

---

[5] The Court may take judicial notice of the City's ordinance and Personnel Rules on this Rule 12(b) motion to dismiss without converting it to a motion for summary judgment. *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) (city ordinances proper subjects for judicial notice); *Dennis v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information on government website); *Demick v. City of Joliet*, 108 F. Supp. 2d 1022, 1025 (N.D. Ill. 2000) (taking judicial notice of city ordinances and rules). The City's Personnel Rules can be accessed at:
https://www.chicago.gov/content/dam/city/depts/dhr/supp_info/HRpolicies/2014_PERSONNEL_RULES-FINAL_2014_v3.pdf.

Indeed, Paterakos does not even offer a *conclusion* of an implied City policy to discriminate based on race or age. *See* Complaint at ¶¶ 90-93. Such an unsupported conclusion would be futile in any event. Courts have rejected threadbare recitals of the existence of a custom or widespread practice that are unsupported by specific factual content. *See Gill v. City of Milwaukee,* 850 F.3d 335, 344 (7th Cir. 2017); *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Petropoulos v. City of Chicago*, 2020 WL 1433826 at *4 (N.D. Ill. March 24, 2020); *Duminie v. Northeast Illinois Regional Commuter Railroad Corp.,* 2020 WL 1288876 at *7 (N.D. Ill. March 19, 2020). Peterakos offers no factual content suggesting an implied policy for purposes of her *Monell* claim in Count III.

Paternakos appears to rely on the "final policymaker" prong of *Monell* to support her claim in Count III. *See* Complaint at ¶ 10 ("Defendant Warren was delegated with final policy making authority with regard to her acts and conduct alleged herein"). The allegation that Warren was a final policymaker of the City is a non-binding legal conclusion on this motion to dismiss. *Iqbal*, 556 U.S. at 678. Indeed, the conclusion directly contradicts Seventh Circuit precedent. *See Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009) (City Council and Commissioner of Human Resources are the final policymakers for the City in the area of employment); *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992) (CPD Superintendent not a final policymaker with respect to alleged discriminatory promotions); *Durkin v. City of Chicago*, 199 F.Supp.2d 836, 843 (N.D. Ill. 2002) (CPD supervisors not final policymakers regarding sexual harassment). Paternakos' *Monell* claim premised on Warren's status as a final policymaker for the City fails as a matter of law.

This case is not comparable to *Vodak v. City of Chicago*, 639 F.3d 738 (7th Cir. 2011), where the Police Superintendent was found to have been delegated final policymaking authority with respect to the manner of controlling mass demonstrations. *Id.* at 748. Here, the action sought to be imputed as official policy of the City is discrimination in employment - a matter on which the City Council and Commissioner of Human Resources *have* spoken - and spoken in a manner directly contrary to

Warren's alleged actions. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality"). Paterakos fails to state a *Monell* claim based on Warren's alleged status as a final policymaker for the City. For these reasons, Count III of the Complaint should be dismissed with prejudice.

      **c.     Peterakos admits she was never denied a leave or benefit to support her claim for FMLA interference in Count IV.**

Under the FMLA, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights granted under subchapter I of the Act. 29 U.S.C. § 2615(a)(1). "To state an FMLA interference claim, a plaintiff must show that '(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled.'" *Stallworth v. Loyola University Chicago*, No. 14 C 7084, 2016 WL 3671426 at *3 (N.D. Ill. July 11, 2016), *quoting Goelzer v. Sheboygan County*, 604 F.3d 987, 993 (7th Cir. 2010).

An FMLA interference claim requires that the employer denied the employee FMLA rights to which the plaintiff was entitled. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 827 (7th Cir. 2012) (affirming summary judgment on FMLA interference claim partially on ground that employer never declined a request for leave); *McGee v. City of Chicago*, No. 11 C 2512, 2011 WL 4382484 at *6 (N.D. Ill. Sept. 16, 2011), *citing de la Rama v. Illinois Department of Human Services*, 541 F.3d 681, 687 (7th Cir. 2008). Actions that do not result in the denial of rights or benefits, such as discipline which does not interfere with taking leave, fail to state a claim for FMLA interference. *Douglas v. Lofton*, No. 12 C 8592, 2013 WL 2156053 at *3 (N.D. Ill. May 17, 2013).

Paterakos admits she was never denied a request to take FMLA leave. Complaint at ¶ 75 ("Plaintiff's FMLA requests were approved each time"), ¶ 100 ("Defendants approved Plaintiff for

10

intermittent FMLA leave"). Paterakos claims Defendants interfered with her rights because she was subjected to "unwarranted disciplinary actions and suspensions." Complaint at ¶ 101. But as in *Douglas*, Paterakos does not allege the suspensions prevented or discouraged her from taking further leave. *See e.g.* Complaint at ¶ 72 (December 2020 leave following September suspension). For this reason, the FMLA interference claim in Count IV should be dismissed with prejudice.

### d. Paterakos admits she was disciplined for alleged abuse of leave, defeating her FMLA claims in Counts IV and V.

The FMLA claims in Counts IV and V also should be dismissed because Paterakos admits the City disciplined her for *abusing* FMLA leave, not for the fact that Paterakos took leave. An employer does not violate the FMLA if the employer disciplines an employee because the employer believes that the employee misused time granted under the Act. *Scruggs v. Carrier Corp.*, 688 F.3d 821, 825-27 (7th Cir. 2012) (FMLA interference and retaliation claims defeated by employer's honest suspicion of FMLA abuse); *Vail v. Raybestos Products Co.*, 533 F.3d 904, 909-910 (7th Cir. 2008) (employer's honest suspicion confirmed by observing employee working for husband's lawn mowing business on day she requested FMLA leave for migraine headache); *Crouch v. Whirlpool Corp.*, 447 F.3d 984, 986 (7th Cir. 2006) (employer had honest suspicion of FMLA abuse where employee's request for leave due to injured knee followed a denial of vacation time and employee observed performing yard work on day off); *Hamm v. Nestlé USA, Inc.*, No. 12 cv 2427, 2013 WL 4401328 at *7 (N.D. Ill. Aug. 15, 2013) (reasonable suspicion of abuse where employee's request for a floating holiday was denied, followed by notice of FMLA leave to take father to doctor's appointment which was not scheduled until after Plaintiff was informed that no appointment had been scheduled). This standard applies even if the employer is mistaken in its suspicion of an employee's misuse of FMLA leave. *Hamm*, 2013 WL 4401328 at *7.

Here, Paterakos affirmatively alleges and admits she was disciplined for alleged abuse of FMLA leave after she was observed socializing around City Hall during the hours she was on leave.

11

*See* Complaint at ¶¶ 55, 61, 67, 72 and attached Exhibit 3 (five day suspension for socializing outside of City Hall for two to three hours on each of three days and swiping in 22 to 52 minutes late after leave). Paterakos admits the facts underlying the suspension. She admits she socialized with other employees during the hours while she was on FMLA leave. Complaint at ¶ 60 and attached Exhibit 3 ("You claimed to be waiting on your physician to call"); ¶ 72 ("Plaintiff responded that she was using her FMLA as intended and having a discussion with other employees between phone calls or waiting for her ride were not F?MLA abuses"). She does not contest she returned late after taking leave. *Id.* at ¶ 60 and attached Exhibit 3. Although Paterakos maintains that conversing with others between phone calls was a proper use of FMLA leave, she alleges no facts suggesting that Warren and the City did not believe otherwise. And for purposes of the Act, it does not matter whose interpretation of the Act was correct as a legal matter. Paterakos pleads no facts plausibly suggesting Defendants did not believe Paterakos misused FMLA leave and disciplined her for that reason. Accordingly, Counts IV and V of the Complaint should be dismissed with prejudice.

  **e.**   **Paterakos' request for punitive damages against the City must be stricken.**

  The City is immune on any claim for punitive damages under Title VII, the ADEA and Section 1983. 42 U.S.C. § 1981a(b)(1); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (Section 1983); *Passananti v. Cook County*, 689 F.3d 655, 677 (7th Cir. 2012) (Title VII); *Collins v. Chicago Transit Authority*, No. 19 cv 5591, 2020 WL 5819871 at *3 (ADEA). Furthermore, punitive damages are not an available remedy under the FMLA. 29 U.S.C. § 2617(a)(1); *Taylor v. Metropolitan Water Reclamation District of Greater Chicago*, No. 15 cv 7855, 2020 WL 1503642 at *14 (N.D. Ill. March 30, 2020); Therefore, any request for punitive damages against the City in Counts I through V should be stricken and dismissed with prejudice.

**V.      Conclusion**

For the foregoing reasons, the Defendant City of Chicago respectfully requests the Court dismiss Counts III, IV and V of the Complaint, with prejudice, and other relief the Court deems appropriate.

Dated:  March 26 , 2021                                     Respectfully submitted,

                                                                                   CELIA MEZA
                                                                                   Acting Corporation Counsel of the City of Chicago

                                                                                   By:  *s/ Mark J. Bereyso*
                                                                                   Mark J. Bereyso
                                                                                   Chief Assistant Corporation Counsel
                                                                                   Attorney for Defendant City of Chicago


City of Chicago, Department of Law
2 North LaSalle Street, Suite 640
Chicago, Illinois   60602
(312) 744-6951
mark.bereyso@cityofchicago.org